FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

2020 JUN 11 PM 4:13

| | | |
|---|---|---|
| JABSIE D. LEWIS,<br>Petitioner, | §<br>§<br>§ | |
| | § | EP-20-CV-133-FM |
| | § | |
| THOMAS E. BERGAMI, Warden,<br>Respondent. | §<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Jabsie D. Lewis, Federal Prisoner Number 40403-051, petitions the Court under 28 U.S.C. § 2241 to intervene in his behalf and order Thomas E. Bergami, the Warden at his place of confinement, to consider him for placement in a pre-release residential reentry center for the maximum amount of time permitted under the Second Chance Act. Pet'r's Pet. 19, ECF No. 1. His petition is denied because it appears from its face that his claims are unexhausted and, in the alternative, he is not entitled to § 2241 relief.

## BACKGROUND

Lewis is a 40-year-old inmate serving a 188-month sentence imposed on April 16, 2010, after he pled guilty to possession with intent to distribute more than five grams of cocaine base. *United States v. Lewis*, 1:08-CR-57-LH-1 (D. N.M.), J. Crim. Case, ECF No. 93. *See United States v. Lewis*, 398 F. Supp. 3d 945, 951 (D. N.M. 2019) (providing the facts and circumstances surrounding Lewis' offense). His sentencing transcript establishes Lewis had multiple prior convictions and qualified for sentencing as a career offender. *United States v. Lewis*, 1:08-CR-57-LH-1 (D. N.M.), Sentencing Tr., ECF No. 110, p. 4. The transcript also notes Lewis, "a convicted felon, possessed 3.1 grams of marijuana , 2.4 net grams of cocaine , 25.06 net grams of cocaine base, as well as a fully loaded revolver" at the time of his arrest.[1] *Id*. at p. 19. Lewis is

---

[1] *See* 28 C.F.R 550.55(b)(5)(ii) (excluding inmates convicted of carrying, possession, or use of a firearm or other

currently incarcerated at the La Tuna Federal Correctional Institution in Anthony, Texas, with a projected release date of July 14, 2021. *See* www.bop.gov/inmateloc (search for Reg. No. 40403-051) (last visited June 9, 2020). Notably, Lewis does not claim Bergami denied him placement in a pre-release residential reentry center or ordered him placed in such a facility for less than twelve months. He merely asks the Court to direct Bergami to consider him for the maximum amount of time possible—twelve months—in a residential reentry center. Pet'r's Pet. 19, ECF No. 1.

## APPLICABLE LAW

A writ of habeas corpus under 28 U.S.C. § 2241 provides the proper procedural vehicle in which to raise an attack on "the manner in which a sentence is executed." *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir. 2000). However, "[h]abeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that . . . if condoned, result in a complete miscarriage of justice.'" *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). To prevail, a habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

During its initial screening of a habeas corpus petition, a reviewing court accepts a petitioner's allegations as true. 28 U.S.C. § 2243; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). It also evaluates a petition presented by pro se petitioner under more a lenient standard than it would apply to a petition submitted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). It must "award the writ or issue an order directing the respondent to show cause why

---

dangerous weapon or explosive from early release).


the writ should not be granted, unless it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

## ANALYSIS

### A. Exhaustion

An initial issue which a court must address when screening a § 2241 petition is whether the petitioner has exhausted his administrative remedies. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam). A petitioner seeking habeas relief must first exhaust all administrative remedies which might provide appropriate relief before seeking judicial review. *Id.*; *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). Exhaustion means "proper exhaustion," including compliance with all administrative deadlines and procedures. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion under the Prison Litigation Reform Act).

The Federal Bureau of Prisons ("BOP") uses a multi-tiered administrative remedy program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). First, the inmate must attempt to resolve the issue informally with the prison staff. *Id.* § 542.13(a). Then, if the inmate cannot resolve the complaint informally, he must file a formal written administrative remedy request on a BP-9 form directed to the prison warden. *Id.* § 542.14. Any adverse decision by the warden must be appealed to the appropriate regional director by filing a BP-10 form. *Id.* § 542.15(a). The final step in the administrative review process is an appeal to the Office of General Counsel on a BP-11 form. *Id.* If an inmate does not receive a response within the time allotted, he may consider the absence of a response a denial at that level and proceed to the next level. *Id.* An

inmate may seek relief in federal court only after he has exhausted all levels of the administrative review process. *See Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.").

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller*, 11 F.3d at 62 (internal citations omitted). Exceptions may be made only in "extraordinary circumstances," and the petitioner bears the burden of demonstrating the futility of administrative review. *Id.*

In this case, Lewis suggests "an administrative appeal would be more than futile" because, he argues, the BOP is predisposed to deny his request. Pet'r's Pet., ECF No. 1, p. 12. He also maintains it would take five months to exhaust "and forcing exhaustion . . . would effectively moot his § 2241 claim through no fault of his own." *Id.* at 16. Hence, Lewis concedes he has not exhausted and dismissal is warranted on this basis alone. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). He asks the Court to "waive the requirement." Pet'r's Pet., ECF No. 1, p. 15.

The BOP administrative review process, as described above, is available and wholly appropriate to address Lewis' claims. The Second Chance Act—which permits the BOP to place an inmate in a residential reentry center for up to twelve months before his release—became effective on April 9, 2008. SECOND CHANCE ACT OF 2007, Pub. L. 110–199, 122 Stat. 692 (Apr. 9, 2008). Lewis was sentenced two years later in April 16, 2010. *United States v. Lewis*,

1:08-CR-57-LH-1 (D. N.M.), J. Crim. Case, ECF No. 93.   Lewis delayed filing his petition until May 12, 2020—more than ten years after his sentencing.   Pet'r's Pet, ECF No. 1.   Given Lewis' "lack of diligence in pursuing this claim, he has not shown that his case presents 'extraordinary circumstances' warranting an exception to the exhaustion requirement."   *Castano v. Everhart*, 235 F. App'x 206, 208 (5th Cir. 2007).   Further, if Lewis has a meritorious claim, there is nothing to suggest—other than his speculation and a statement by a former BOP director—that the BOP will not afford him relief through its administrative remedy process.   And if the BOP has made an error concerning his placement in a residential reentry center, the BOP should have an opportunity to correct the error before Lewis is permitted to seek judicial intervention.   Indeed, an attempt by Lewis to exhaust through the BOP administrative review process would clearly not be a patently futile course of action.   Finally, while "[i]t is true that exhaustion . . . takes time, . . . there is no reason to assume that . . . prison administrators . . . will not act expeditiously."   *Preiser v. Rodriguez*, 411 U.S. 475, 494–95 (1973).

Consequently, the Court finds Lewis has failed to demonstrate "extraordinary circumstances" excusing his failure to exhaust administrative remedies and his petition should be dismissed without prejudice.   But even if Lewis had properly exhausted, the Court would still not grant him § 2241 relief.

### B. Authority of the Bureau of Prisons to Place Inmates

The Court notes that two statutes govern the discretion of the BOP to place an inmate in a particular facility: 18 U.S.C. § 3621(b), which addresses the imprisonment of a convicted person, and the Second Chance Act, which provides for post-imprisonment rehabilitation services.

Section 3621(b) grants the BOP the authority and discretion to designate the place of

confinement.  Under § 3621(b), the BOP:

> may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable.

18 U.S.C. § 3621(b).  In making this determination, the BOP must consider "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . and (5) any pertinent policy statement issued by the Sentencing Commission[.]"  *Id.*

The Second Chance Act directs "a shift from policing those on parole to rehabilitating them," and places on the "parole system . . . an increasing special obligation to help federal offenders successfully reenter into society."  *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring).  It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed to rehabilitate prisoners and reduce recidivism.  *Id.*  The Act also addresses placement in a community corrections facility such as a halfway house.  18 U.S.C. § 3624(c).  It grants the BOP Director the discretion to place a prisoner in a community corrections facility for up to twelve months, instead of limiting that time to six months as permitted by the prior law.  *Id.*  The Act authorizes the Director, "to the extent practicable, . . . to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  *Id.*  It also directs the BOP to issue new regulations to ensure that placements in community correctional facilities are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the

community." *Id.* § 3624(c)(6).

The BOP adopted regulations implementing the Second Chance Act, codified at 28 C.F.R. §§ 570.20–.22, effective October 21, 2008. Both the statute and the regulations instruct the BOP to make a determination on the amount of time a prisoner should spend in residential reentry center "on an individual basis." *Id.*; 28 C.F.R. § 570.22.

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in any particular place. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).[2]

Moreover, a petitioner complaining about a BOP assignment is not entitled to judicial relief for an alleged "violation of his Fifth Amendment right to due process because 'the failure to

---

[2] The statutory language in 18 U.S.C. § 4082(b) was re-codified through Pub. L. 94-473, Title 2 II, § 212(a)(2), Oct. 12, 1984, and is currently found at 18 U.S.C. § 3621(b).

receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest.'" *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981))); *accord Nativi–Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003); *see also Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege . . ., denial of such relief cannot violate a substantive interest protected by the Due Process clause."); *cf. Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[A] statute which 'provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process.'") (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)).

Thus, after reviewing Lewis's petition and the applicable statutes, the Court finds the BOP has exclusive authority and discretion to determine if and when to assign Lewis to a residential reentry center. The Court further finds the record does not support a conclusion that Bergami acted "arbitrarily, capriciously, and in a discriminatory manner," violated the Second Chance Act or discriminated against Lewis with regard to his placement. As a result, the Court also finds he is not entitled to § 2241 relief.

## CONCLUSIONS AND ORDERS

Accordingly, the Court finds that Lewis has not only failed to exhaust his administrative remedies, but also has no constitutional or statutory right to placement in a residential reentry center. The Court concludes, therefore, that it appears from the face of Lewis's petition and other pleadings that he is not entitled to § 2241 relief.

The Court consequently enters the following orders:

**IT IS ORDERED** that Jabsie D. Lewis' "Petition for Writ of Habeas Corpus" under 28 U.S.C. § 2241 (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust.

**IT IS ALSO ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SO ORDERED.**

SIGNED this 11th day of June 2020.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**